UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL RAE EINHARDT,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

Hon. Gordon J. Quist

Case No. 1:09-cv-660

# REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.§ 405(g), to review the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 60 years old as of the date her insured status expired. (Tr. 14, 88). She successfully completed high school and worked previously as a dispatcher. (Tr. 28, 139).

Plaintiff filed for benefits on February 24, 2006,[1] alleging that she had been disabled since June 27, 1999, due to hip pain and arthritis. (Tr. 88-90, 113). Plaintiff's application was denied, after which she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 53-85). On November 20, 2008, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff and vocational expert, Norman Abeles. (Tr. 22-52). In a written decision dated January 27, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 14-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2005. (Tr. 14). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

---

[1] Plaintiff filed a previous application for benefits on August 8, 2000, which was denied. (Tr. 14).

## **RELEVANT MEDICAL HISTORY**

On February 10, 2003, Plaintiff participated in an abdominal ultrasound examination, the results of which were "normal." (Tr. 211). On June 27, 2003, Plaintiff participated in an intravenous pyelogram examination,[2] the results of which were "unremarkable." (Tr. 208). On June 30, 2003, Plaintiff participated in a CT scan of her abdomen and pelvis, the results of which were "unremarkable." (Tr. 206).

On June 30, 2004, Plaintiff was examined by Dr. John Collins and Physician's Assistant J. Opdycke. (Tr. 184). Plaintiff reported that she was experiencing "increased varicosities with aching" in her lower extremities. (Tr. 184). Plaintiff reported that she had not tried wearing compression stockings. (Tr. 184). It was noted that while Plaintiff has previously had "difficulty with osteoarthritis," she was "not currently on any medication." (Tr. 184). Plaintiff was given a prescription for compression stockings and scheduled to participate in a venous duplex examination of her lower extremities. (Tr. 184).

On August 9, 2004, Plaintiff participated in this examination, the results of which revealed "mild" venous insufficiency in both legs. (Tr. 185). The examination also revealed a deep vein thrombosis in Plaintiff's right leg, which was characterized as "old and does not pose any threat." (183, 185). When she was examined on August 18, 2004, Plaintiff reported that she had not yet begun wearing her prescription compression stockings as instructed. (Tr. 183). Plaintiff was reminded of "the importance of [wearing her compression stockings] during the day." (Tr. 183). Treatment notes dated November 10, 2004, indicate that Plaintiff "is not wearing her stockings."

---

[2] An intravenous pyelogram is an examination that utilizes iodinated contrast material injected into the patient's veins so as to "view and assess the anatomy and function of the kidneys, ureters and the bladder." *See* Intravenous Pyelogram, available at http://www.radiologyinfo.org/en/info.cfm?pg=ivp (last visited on July 23, 2010).

(Tr. 181).

On August 24, 2004, Plaintiff participated in a CT scan of her chest, the results of which revealed "no abnormality." (Tr. 213). On August 27, 2004, Plaintiff participated in an ultrasound examination of her abdomen, the results of which revealed "no abnormality." (Tr. 216).

On December 19, 2005, Plaintiff participated in an EMG examination, the results of which revealed "electrophysiologic evidence consistent with but not diagnostic of left lumbosacral radiculopathy." (Tr. 221). X-rays of Plaintiff's left hip, taken the same day, revealed "severe" degenerative changes. (Tr. 225). An MRI examination of Plaintiff's left hip revealed "osteoarthritis of the left hip, advanced." (Tr. 227). X-rays of Plaintiff's left femur revealed "moderate knee degenerative changes." (Tr. 226).

On January 31, 2006, Plaintiff was examined by Dr. Kenneth Lombardi. (Tr. 186-87). Plaintiff was diagnosed with advanced osteoarthritis of the left hip. (Tr. 186). The doctor indicated that Plaintiff's hip was "in need of replacement," but Plaintiff stated that she was "scared" to have surgery. (Tr. 186). Following a March 10, 2006 examination, Dr. J. Wesley Mesko recommended to Plaintiff that she undergo hip replacement surgery. (Tr. 277-80). Plaintiff agreed, but declined to schedule the procedure, indicating that she would instead "call back to schedule this at a time that is convenient to her." (Tr. 280).

On June 9, 2006, Dr. Lombardi instructed Plaintiff to perform "home exercises." (Tr. 267). Treatment notes dated August 2, 2006, indicate that Plaintiff was experiencing "marked impairment in range of motion of the left hip." (Tr. 253).

On June 26, 2007, Plaintiff was examined by Dr. Joseph Burkhardt. (Tr. 271). An examination revealed the following:

5

> Antalgic gait pattern. Exam of the left hip reveals groin tenderness. No effusion or masses. Positive pain with range-of-motion. No instability. Motor is 5/5 in flexion and abduction. Contralateral hip reveals no tenderness, full range-of-motion, no instability. Strength is 5/5 in flexion and abduction. Skin is without erythema. Sensory exam is intact.

(Tr. 271).

Plaintiff was diagnosed with advanced degenerative joint disease of the left hip, for which hip replacement was recommended. (Tr. 271).

On July 19, 2007, Dr. Burkhardt authored a letter concerning Plaintiff's condition. (Tr. 272). The doctor reported that Plaintiff "has voiced interest in" having her hip resurfaced as opposed to undergoing total hip replacement surgery. (Tr. 272). Plaintiff reported that she "is active" and looks forward to becoming more active following this procedure. (Tr. 272).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from (1) osteoarthritis of the left hip; (2) degenerative joint disease of the left knee; (3) post tibial tendon repair of the right ankle; and (4) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-17). The ALJ concluded that despite her impairments, Plaintiff retained the ability to perform her past relevant work as a dispatcher. (Tr. 17-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating

6

disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date her insured status expired, Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) she must be able to sit 5-10 minutes hourly; (2) she cannot climb ladders, ropes, or scaffolds; (3) she cannot balance, kneel, crouch, crawl, or bend; (4) she can only rarely climb stairs; (5) she cannot use foot controls, work near dangerous unprotected machinery, or at unprotected heights; (6) she cannot use vibrating tools; and (7) cannot walk on uneven ground. (Tr. 17). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

At the administrative hearing, a vocational expert testified that Plaintiff could, consistent with her RFC, perform her past relevant work as a dispatcher. (Tr. 49). The vocational expert further testified that even if Plaintiff could not perform her past relevant work, there nevertheless existed approximately 14,000 jobs in the lower half of the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 49-50). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

a. The ALJ Properly Evaluated Plaintiff's Impairments

Plaintiff asserts that the ALJ erred by failing to recognize that she suffered from severe anxiety and severe back pain. While the ALJ concluded that Plaintiff suffered from several severe impairments, she did not find that Plaintiff suffered from severe anxiety or back pain.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also*, *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 929 n.2 (6th Cir., Dec. 14, 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also*, *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

The record supports the ALJ's conclusion that as of the date Plaintiff's insured status

expired, she did not suffer from anxiety or back pain that was sufficiently severe to limit her ability to perform basic work activities. The medical record contains no evidence that supports Plaintiff's position that she suffered such impairments prior to the expiration of her insured status. Moreover, even if the ALJ's conclusion that Plaintiff did not suffer severe anxiety and severe back pain is not sufficiently supported by the evidence, the result is the same.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the evidence of record. Thus, even if the Court assumes that the ALJ erred in failing to find that Plaintiff suffered from severe anxiety or severe back pain, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might

10

lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

        b.        The ALJ Properly Determined that Plaintiff could Perform her Past Relevant Work

When asked whether a person with Plaintiff's RFC could still perform Plaintiff's past relevant work as a dispatcher, the vocational expert testified that such a person could perform dispatcher jobs as they are performed in the general economy, but not Plaintiff's specific dispatcher job as she performed it. (Tr. 49). Relying on this testimony, the ALJ concluded that Plaintiff was not disabled because she retained the ability to perform her past relevant work. Plaintiff asserts that the ALJ improperly relied on the vocational expert's testimony. Specifically, Plaintiff asserts that because the vocational expert testified that she would need a period of vocational adjustment before being able to perform other dispatcher jobs, the ALJ improperly relied on his opinion.

When evaluating whether a claimant retains the capacity to perform past relevant work, the Court must consider such work both "as the claimant performed it" as well as how "it is generally performed within the national economy." Social Security Regulation 82-61, 1982 WL 31387 at *1-2 (S.S.A. 1982); *see also*, 20 C.F.R. § 404.1560; *Garcia v. Secretary of Health and Human Services*, 46 F.3d 552, 556-57 (6th Cir. 1995); *Delgado v. Commissioner of Social Security*, 30 Fed. Appx. 542, 548 (6th Cir., Mar. 4, 2002) (citations omitted). It is well accepted that if a claimant cannot perform her past relevant work as she actually performed it, but "can perform the functional demands and job duties as generally required by employers throughout the economy, the

11

[claimant] should be found 'not disabled.'" *DeMoss v. Secretary of Health and Human Services*, 1988 WL 42006 at *5 (6th Cir., May 5, 1988) (citing Social Security Ruling 82-61); *see also*, *Montano v. Barnhart*, 2003 WL 749527 at *5 (S.D.N.Y., March 5, 2003) (same).

Thus, the ALJ did not err, at step four of the sequential process, in relying on the vocational expert's testimony that Plaintiff retained the ability to perform her past relevant work as a dispatcher as such job is performed in the general economy. Contrary to Plaintiff's assertion, the vocational expert did not testify that Plaintiff would require a period of vocational adjustment before being able to perform other dispatcher jobs. (Tr. 49). The vocational expert's testimony regarding vocational adjustment concerned his opinion that during Plaintiff's past relevant work as a dispatcher, she acquired clerical skills that, following a period of vocational adjustment, would enable her to perform certain clerical jobs. (Tr. 48-49). This particular testimony was separate and distinct from the vocational expert's testimony that Plaintiff retained the ability to perform her past relevant work as a dispatcher as such job is performed in the general economy.

Furthermore, even if the ALJ did err in this regard the result is the same. As discussed previously, in addition to testifying that Plaintiff retained the ability to perform her past relevant work, the vocational expert also testified that there existed a significant number of other jobs which Plaintiff could perform consistent with her RFC. As the ALJ's RFC determination is supported by substantial evidence, the vocational expert's testimony in this regard constitutes substantial evidence to support the conclusion, at step five of the sequential process, that Plaintiff was not disabled prior to the expiration of her insured status.

c. The ALJ Properly Evaluated the Medical Evidence

In a sworn statement, taken more than three years after the expiration of Plaintiff's insured status, Dr. Lombardi expressed the opinion that Plaintiff was disabled prior to the expiration of her insured status. (Tr. 285-301). The ALJ rejected the doctor's opinion. (Tr. 20). Plaintiff asserts that because Dr. Lombardi was her treating physician, the ALJ was obligated to accord controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

With respect to the sworn statement on which Plaintiff's argument rests, the ALJ stated as follows:

> The undersigned acknowledges a deposition dated November 18, 2008, over three years after the claimant was last insured for disability benefits, from claimant's primary care physician, Kevin Lombardi, MD, who reported treating the claimant since 2001. It is noteworthy that, by Dr. Lombardi's testimony, he did not even begin treating the claimant until more than two years after the alleged disability onset date. Nevertheless, his recollections and summary of his early treatment includes the oldest medical information in the record and does not objectively go back to the June 1999 alleged onset date. The physician "thought [he] attempted referrals" to various subspecialists regarding joint replacement surgery. Assuming Dr. Lombardi's recollections to be correct, none of these reports, or Dr. Lombardi's records of these referrals, is found in the exhibit file. Later in the deposition report, Dr. Lombardi began to recount treatment from "not too long ago, a few weeks ago, I believe" where the claimant was experiencing significant pain and other symptoms. While the undersigned is very sympathetic to the claimant's *current* medical condition, it must be reiterated that the claimant's insured status for disability purposes expired on June 30, **2005**. Dr. Lombardi was deposed in November 2008. Unfortunately,

14

according to Social Security Law and regulations, the claimant's medical condition and treatment after the date last insured are not relevant unless the claimant is first found disabled prior to expiration of her insured status.

Lastly, upon direct questioning by the attorney later in the deposition, Dr. Lombardi opined that claimant's hip osteoarthritis "was sufficiently severe to keep her from working back at that time [June 27, 1999]." First, the issue of whether or not an individual is "disabled" or "unable to work" as relates to this decision is an issue reserved to the Commissioner of Social Security (20 CFR 21 404.1527(e) and SSR 96-5p). Second, it has not been established that Dr. Lombardi was even treating the claimant in 1999. Additionally, pursuant to Social Security disability regulations, a claimant has the burden of establishing that a "medically determinable" impairment exists. A "medically determinable" impairment must be established by objective signs and diagnostic laboratory testing, not by claimant or third party statements of symptoms. There is simply no objective medical evidence in this file going back to June 1999. Finally, Dr. Lombardi's treatment notes in Exhibits 2F, 6F, and 10F do not include limitations, restrictions, or objective medical findings that would cause the undersigned to conclude that the claimant's limitations prior to June 30, 2005, were greater than those indicated in the above residual functional capacity statement.

(Tr. 20).

As the ALJ recognized, the evidence of record fails to support the conclusion that, prior to the expiration of her insured status, Plaintiff was impaired to an extent beyond that recognized by his RFC determination. Specifically, the ALJ stated, "[i]n consideration of the evidence, it must be concluded that the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual prior to her June 2005 date last insured." (Tr. 19). As noted above, treatment notes dated as late as June 30, 2004, indicated that Plaintiff was not taking "any medication" for her impairments. Even Dr. Lombardi testified that Plaintiff did not begin taking pain medication until December 2005, six months *after* the expiration of her insured status. (Tr. 294).

This is not to suggest that Plaintiff, as of the date her insured status expired, was capable of performing any and all work. As the ALJ further recognized, "[t]his is not to say the claimant was symptom-free or did not experience some difficulty in performing tasks. . .[h]owever, the totality of her statements are inconsistent with the objective evidence and do not demonstrate the existence of limitations of such severity as to preclude the claimant from performing any work on a regular and continuing basis prior to June 30, 2005." (Tr. 19). The ALJ's RFC determination is supported by substantial evidence. To the extent that Dr. Lombardi opined that Plaintiff was impaired to a greater extent, the ALJ correctly rejected such opinion.

In sum, Dr. Lombardi offered nothing but a conclusory opinion that Plaintiff was disabled prior to the expiration of her insured status. This opinion enjoys no support in the medical record and is contradicted by substantial medical evidence. Accordingly, the ALJ's decision to accord less than controlling weight to Dr. Lombardi's opinion is supported by substantial evidence.

## **CONCLUSION**

Accordingly, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Therefore, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: July 28, 2010  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge